Before we start the clock this morning, we've got an appeal and a cross-appeal, correct? And you each have 20 minutes for each side, and that's for the whole thing. It's not 20-20-20-20. So just to make that clear. And I suppose, was one of you, was MasTec going to go first? That was what I intended to do. Okay. Then probably in terms of, because you've got the cross-appeal, I would say why don't you talk about your appeal, and then when we go over to the end, and then reserve some time so that you can respond to the cross-appeal when we come back. So that when we come to Gomez, you respond to MasTec, but also state your point on your appeal, and then any little time that you have left would be to respond at the point that you're an appellant. I hardly make sense to myself, but do we understand that for the most part? I think that's right. Okay. We reserve a minute in our argument to serve rebuttal on that cross-appeal. Right. Okay. And so, you know, obviously if the court, I mean, there's quite a few issues, and it's fairly complicated, and obviously to the extent, you're kept to the 20 minutes, but if we still have questions, then we, you know, we'll continue to ask questions as far as that goes. So thank you. So just officially to state it, I would like to reserve the five minutes, please. All right. Thank you. May it please the Court, good morning, Your Honors. My name is Richard Boardman, and I represent the defendants MasTec and Renegade of Idaho. In this case, we are the defendants, the appellants, and as you've noted, the cross-appellee. I'd like to just take a brief moment to introduce Mr. Alberto de Cardenas, who is the general counsel from MasTec and is with us today from Miami, Florida, for the arguments. Thank you. I have been through several arguments, and I've already seen how you like to approach things. I am prepared to talk about some of the issues and start on my own. Well, I mean, we're familiar with the briefs, and we're familiar with all the facts. So, you know, I mean, my view, and I think generally, we like to get right into the issues. So you don't need to waste any of your valuable time on facts or that. I did not intend to do that. Let me start with the statute of frauds issue because we think it is a very critical appeal issue in this case. Your Honors, what Judge Williams did with respect to the statute of frauds issue in the application of the Idaho statute under the facts of this circumstances seems to be an anomaly to us. On the one hand, he recognizes that the alleged five-year oral employment agreement is subject to the statute of frauds, and he will not allow recovery for years that Mr. Gomez was not employed with us after he was terminated. But on the other hand, and as we said in our briefs- Which is good news for you and bad news at that point for Mr. Gomez. Correct. But the anomaly here, again, is where we believe that Magistrate Williams misapplied the Idaho statute of frauds by, in essence, carving out, if you will, an exception when he recognizes in some fashion that this bonus agreement, which was pled by the plaintiff as a very integral part of the alleged five-year oral employment agreement, that it somehow stands on its own legs as a separate agreement. Can I ask you a question about this? It might be collateral to what you're trying to argue, but assuming, just in general, an employment contract, the proof of the contract is barred by the statute of frauds, okay? Let's assume that. What does Idaho do where somebody has actually worked for the employer under that noncontract for, say, make it six months, make it whatever length of time you want. What do they do when the guy says, okay, I'd like my paycheck? Do they say, sorry, you're not entitled to any paycheck because it's barred by the statute of frauds? Sorry, you're entitled to minimum wage? How is that answered under the law? I mean, your example using a six-month period of time, I mean, maybe that wasn't the point. No, the contract is like this one, for five years. Oh, the contract is for five years? Yeah, the contract's for five years and it's barred by the statute of frauds, right? Okay, we'll agree to that. But the guy has worked for six months or a year under the contract. Suppose the guy said, look, we'll pay you at the end of the year. That's the deal. What does Idaho do about that? Say, sorry, you worked for nothing? Sorry, you worked for Quantum Merrill? Sorry, you worked for minimum wage? What does Idaho do with that problem once they strike down the employment contract? Once they strike the contract because of the statute of frauds, I would say that you mentioned Quantum Merrill. I would believe that that would be a cause of action if necessary. The wage claim statute would provide some availability. What wage? Back to depending upon whether or not any of the terms were disputed. What wage? Excuse me? What wage? The wage claim statute would hook onto what wage? In terms of whether or not, well, if there was a dispute over the wage, is that what your hypothetical is assuming, Judge Fernandez? I mean, is there a dispute over the wage or are you just saying how do you fill in that? No, not necessarily. I'm just asking in general. The guy said I'll work for five years at $1,000 a month. That's stricken. That no longer exists. Right. I believe it would be handled either through a Quantum Merrill or possibly a wage claim, again, if there is no dispute over the specific term. What would the wage claim be for the $1,000 a month? If that was the agreed upon compensation, yes. Yes. If there was performance and there was no dispute over the terms of his compensation, his or her compensation, then I think that there would be a means to get around to circumvent the statute of frauds application. I'm not trying to circumvent. I'm just asking what does IDO actually do, or do you know what they actually do? I didn't find any cases offhand. No, and I think that there probably is a gap in the case law to answer your particular hypothetical to say what relief would an employee in that circumstance have. Okay, and if on what I'm calling wage, if the wage were a bonus thing, say your wage is going to be 5% of what the company earns this year, and let's assume there's not a dispute that that's what it was, I take it that would be treated the same, right? That would be treated as what? The same as any other wage. If there was no dispute over the bonus? For the moment. Yeah. Yes. Okay. Yes. If there was no dispute under that hypothetical, I would agree with you. But it's hard to say what IDO would do or how it would be handled in IDO, but I do believe under those circumstances that your hypothetical is assuming that there are avenues of relief, causes of action available to the employee. This specific bonus agreement that we're dealing with in this case does not comply with the IDO statute of frauds by any means. What Judge Williams said in ruling on summary judgment, he kind of invented, I will say, somewhat of a fiction here by saying that because it is possible for the bonus conditions to be completed within one year, on a year-to-year basis, that that somehow takes it out of the statute of fraud, separate and apart from the fact that it was an integral part, as alleged, by the plaintiff of this five-year agreement. Wasn't that a term of the bonus agreement, though, that every year they would look at what the – there would be 7% over the 25% profits that were made? So couldn't you look at it as having – or couldn't you look at it as being performed within a year in that respect? You could, but that's not what the Idaho statute says. Go back to the Idaho statute, and this is where I think Judge Williams misapplied the statute. The statute says, and I'm quoting, an agreement that by its terms is not to be performed within a year from the making thereof. It does not say an agreement that can be performed within a year. That's where Judge Williams – that's what Judge Williams did. And, in effect, he invented like five annual agreements here from the making thereof. So look at the circumstances. We have Mr. Gomez, who is in the second year of his employment, and he is trying to enforce something that goes back to when he and Mr. Daley, the representative of Mass Tech and Renegade, first sat down in January of 2001. How can Judge Williams say that that is, as the Idaho statute says, from the making thereof? It just does not fit. And that is the function of statutes of frauds. I mean, going back to our remedies class that we all had in law school, it is to prevent frauds and perjuries. If I did my little bit of amateur looking before this argument, it came from English jurisprudence, the statutes of frauds and perjuries, because courts, legislatures, want people, parties, to put terms in writing. And that's why statutes of frauds are so critical. So if you go back to saying what Judge Williams, in effect, said, here we are a couple years after Mr. Gomez was first hired and first allegedly had this agreement. How is it ever to be considered within a year from the making thereof? He was asking for his bonus for the year 2002, correct? Correct. I thought there was a reason why he didn't have a bonus in 2001. There were no profits. I mean, there was a reason why. I think that's the evidence that came in. This issue really didn't come to a head, I think is a fair way to describe it, because there were no profits. Nobody even kind of, you know, even brought the issue up. It was almost a foregone conclusion, if you will. And I don't want to misquote the testimony that came in the trial, but that's my recollection of what. And so here we have, again, here we have two years later, in effect, memories fade. People end up in litigation. People end up in appellate courtrooms. But statutes of frauds on some higher level are designed to avoid these types of situations. As unfair or as onerous as somebody from the outside might be thinking, the application of a statute of frauds could be under these circumstances. And that would apply to ordinary wages also, right? Excuse me? That would apply to his monthly wages also, I take it. The wages were not in dispute. I know they weren't. They were not in dispute. I suppose they were. That would apply to that also, I take it. If they were in dispute, it would not be available under a statute of frauds. But I would suggest to you that there would be, I mean, if Mr. Gomez, as he was, was paid monthly, once that first month was paid, his annual salary was $120,000, so that first January of 2001 payment of $10,000, then you've got part performance. On my client's part, and I think that he's probably got a pretty good argument to get around the statute of frauds under a specific performance allegation because that's where the part performance kind of factors into it. But the fact is this, two years later, in effect, this dispute arises and ends up in litigation. Let's assume the statute of frauds doesn't apply. What about what is the basis of the percentage of profits that Mr. Gomez would get? I mean, is it all the boring crews or just the boring crews for the inside ones for the company? I mean, that's the material issue that you say was in dispute. There was no meeting of the minds. There was no meeting of the minds. And, again, I mean, that's kind of they're interrelated issues in some respect,  Now, I understand why you would want that instruction, because that would allow you an opportunity to, if the jury found that there was confusion, that the parties had not, you know, they had a misinterpretation, then you would completely walk away from the bonuses. So that being said, if the court made an error, I would have a hard time saying it would be a harmless error. But the other side of it is there's no dispute that there was a bonus provision. There's no dispute that it was based on the boring crews. They just had a different way of calculating what the boring crews were. Why should you be allowed to make that? If we make that a material issue, then it would seem to me that everything would be a material issue. And then every time, I mean, everyone, if there had been a dispute of whether there was a bonus or something like that, I'm completely on board. But, you know, I see what you're asking, that everyone would always make, they think of just one thing that someone didn't, whether it was paid on March 1st as opposed to March 2nd or whatever, and then that would allow the whole thing to be put back before the jury. I know why you want it. I respectfully disagree with you, Your Honor, because I don't know how you look at this bonus formula and not say that the definition of bore crew or bore division, and whether it includes just one of the crews or all three of the crews, how you can separate that from even the 7% over 25% of the profits. It is all part of that term. It is as essential to the calculation as the 7% is. We didn't have the problem the year before, though, did we? It never came to a head because there were no profits. So you're right. But, you know, when you're talking, but they would have talked about the bonus at that time, and so if it really were material, let's say there's no profits across the board, that would have been the perfect time to say, okay, so, you know, what are we talking about here? I don't think there was any evidence that there was really any meaningful discussion. There wasn't any dispute until he got fired, right? There wasn't any evidence that there was any kind of meaningful discussion, even back at the end of 2001 or early 2002, to suggest that it had been somehow fleshed out because it just simply didn't come to a head. Your position is that the jury should have been instructed that they had to first find the contract was formed. Yes. Rather than telling the jury that there was a contract and they would decide whether what the boring division involved. Yes. Because they believed, obviously, Mr. Gomez, as opposed to your client. They did. And I will be the first to admit that there was plenty of evidence there for a jury to determine that there was mutual assent. The point is there's plenty of evidence there for the jury to determine that there was no mutual assent. And they needed to be given that opportunity. The judge let them, in effect, fill in the blanks by declaring this term ambiguous. You don't get to filling in the blanks by a jury on essential material terms of a contract that goes straight to the formation itself. You don't let juries do that. There's no case law for that. Do you want to save the balance at this point? I do. Thank you. Thank you. Good morning. Good morning. May it please the Court. First off, I'd like to reserve a minute, I guess, for Sir Rebuttal. But I guess, assuming that he talks about the cross appeal, if there's any issue that I need to address, I'd certainly like to have at least a minute to address that. My name is Eric Rossman. I represent the appellee in this case, Richard Gomez. And I want to address the points that were particularly raised during opposing counsel's argument. I have a question that I just need to ask you before you go into that. And because this is sort of the way that I approach my work. And neither of you have raised this, but I always look at jurisdiction first. And I cannot tell from the record, what were the respective principal places of business for MAC Tech North America, Inc., MAC Tech Services Company, and Renegade of Idaho at the time Gomez filed the second amended complaint? How do you get your complete diversity here? If I remember correctly, MazTec, Inc. is a publicly held corporation with principal place of business and headquarters in Florida. MazTec North America, Inc. is a wholly owned subsidiary of MazTec, Inc. that has its principal place of business and headquarters in Minnesota. And I believe Renegade of Idaho was, too. I'd have to go back and look at the allegations in that. That certainly was never raised. Well, I know no one's ever raised it, but jurisdiction is always the first thing to look at. Even though they're called Renegade of Idaho? Yeah, well, that was the name before they were purchased by MazTec. That was the name that they had all along. But if I remember correctly, once Renegade was purchased by MazTec, it was formed into a new corporation with a principal place of business or a formation location outside of the state of Idaho. And I think that's where the diversity was originally. And with regard to the statute of frauds, I really have four primary arguments. The first argument is that issue was improperly raised on appeal. That issue was waived before the lower court and should not be addressed on appeal. The second argument is that the court's decision was not internally inconsistent, was absolutely consistent with the evidence the court had before it on summary judgment. And lastly, even if the statute of frauds were to apply, the doctrines of part performance and acknowledgment certainly would bring it outside of the statute. With regard to the fact that the issue is improperly raised, I'm sure this Court is aware that the Ninth Circuit has held for many years that orders denying summary judgment are generally not reviewable following the trial on the merits. And that's what happened here. The judge denied summary judgment. They went and tried the case. They never said one word about statute of frauds. They never asked to try any factual issues relating to statute of frauds. They just appealed it and then tried to revive that issue now that the jury has entered a judgment against them. Now, there are exceptions to that general rule, and the exception in Lum versus City and County of Honolulu, the court said, where issues of fact remain to be tried. And further, in Banuelos versus Construction Laboratory Trust Funds for Southern California, the court held that the court will not review a denial of summary judgment on appeal except when the district court made an error of law that, if not made, would have required the judge to grant the motion. And I would submit to the court in this case. Well, it's clearly an error of law that they would be ‑‑ they couldn't have taken an interlocutory appeal, and so the only time they can appeal it is now. And I would submit to the court, that's correct. If this court can say that if the ‑‑ number one, that the lower court erred as a matter of law, purely a matter of law, and number two, that that error, had the court not made that error, the court would have been required to grant summary judgment in favor of the opposing party, the appellant. And how would it have been tried during the trial? I mean, you said it would have been addressed. How? Very important issue. And that is why I would emphasize to the court that this lower court, addressing this motion for summary judgment, not only was not required to enter summary judgment in favor of Maztec on the statute of frauds issue, but was precluded from entering summary judgment based upon the deposition testimony of Richard Gomez. That testimony was before the court on summary judgment. And that testimony was very clear, or was not a model of clarity, but it did indicate, and as we argued to the court and argued to this court on appeal, his testimony was that the bonus provision of the employment contract had its own term, had a separate term, and that was to continue as long as they felt they were making money. He said it was open‑ended. He said there was no time frame on the bonus provision. And we can certainly envision a employment contract that may have a five‑year term to it, but the company may say, hey, look, we will give you a bonus and we'll review it on a year‑to‑year basis. And that's why the judge found there was no five‑year term to the bonus agreement. Right. The court held there was a ‑‑ Obviously, you started out in the beginning that you wanted everything that he was entitled to under his five‑year contract. Okay, you lose on that. They, and then, but then, so then you've got to move to your second thing, that it's year‑to‑year, the court buys that. They, on the other hand, don't want to, you know, they didn't want to pay you for the rest of the five years, they win on that, and they don't want to pay you on the bonus, and they lose on that, right? So everyone's had a little bit, as litigators have to do, we have to shift when we lose and go to our next best argument. I agree. And what happened there, and I would emphasize to the court, there's not one shred of evidence before the district court, and there was not one shred of evidence before this court, that would indicate as a matter of fact that the bonus agreement was tied to a five‑year term. Not one shred of evidence. Opposing counsel says we alleged in our complaint that it was tied to the employment agreement. It can be tied to the employment agreement, as Richard Gomez testified, without carrying a five‑year term. They can give you five years, they can say we'll employ you for five years, but they can say we'll review your bonus agreement on a year‑to‑year basis. And if we decide on some year we're not making money on this bonus agreement, we can terminate the bonus agreement. It can be three years, it can be ten years, it can be six months. Well, I have no doubt in your mind if after a year, if they said, you know, okay, well, we don't think that you have a bonus, you know, we're not going to continue your bonus agreement for next year, Mr. Gomez would have said at the one‑year mark, he would have said, oh, no, no, no, that's for five years, and we just calculated every five years. Well, we can develop assumptions, but I can indicate to the court that the facts, the evidence before the court on summary judgment was his testimony. And there was no contrary evidence. And his testimony was that they wanted to keep the bonus agreement open‑ended. It did not have a time frame on it. If they decided in a particular year they were not making money or they were not making sufficient money to continue the bonus agreement, they could cancel it. That sort of doesn't make sense, whatever you're saying there. I don't understand what you're saying. Well, we can have ‑‑ Obviously, if they decide they're not making money, they don't have to cancel it. He gets zero as a bonus, because I guess you don't get bonuses if you're making zero. So you're saying they're not making enough money, but his bonus is calculated on the amount they're making. Somehow that explanation sounds almost as strange as the explanation as we sat down and we worked out this five‑year employment agreement, but the bonus wasn't part of that. I just worked for that anyway, and we got ourselves a separate bonus agreement. Those sound pretty weird, and that might be his ‑‑ I understand he said that at his deposition. He said, well, it was just entirely separate, and if they didn't make money, they wouldn't give me a bonus. Of course not. That's what it was. I'm understanding that. You have to understand the Boring Division was nothing more than a division of a much larger company. And what I think Rich Gomez was trying to say there was that this division may be making money in a given year, but the company may be doing so poorly that they don't want to pay him a great big bonus for this division. They may want to terminate this portion of the compensation plan as a business decision for the company as a whole. And that's why I think he was saying that they could discontinue this if they aren't making money. I think he was referring to the company not making money, not just the division. What's your exception to the statute of frauds, the PERT performance? Well, the first argument is that with that testimony by Rich Gomez, the bonus, which is the only testimony before the court, the only undisputed testimony, with that evidence before the court, this is a provision with an undefined term. This is a provision that does not have a defined term. And under the Idaho Supreme Court case, it very clearly laid this out in General Auto Parts v. Genuine Parts Company, 132 Idaho 849-979-P2D-1207. The Idaho Supreme Court said that where the oral contract has an undefined term, and that case was lifetime. So if I understand it, your argument then, the extension of it would be, that the district court, when it approached, has a summary judgment in front of it, and it says, you know what? I can't grant you guys summary judgment because the evidence in front of me now, at this time, says that actually this was separate. But Gomez hadn't moved for summary judgment, so the district court doesn't issue a summary judgment at all. So that issue just is out there still. I mean, they can argue it or not argue it. It's up to them. Is that your position? They go to trial and say, Gomez is a liar. We want to try the issues on the summary judgment, or we want to come back and make a new summary judgment argument. But all the district judge did here was say, listen, on the evidence in front of me, I'm not going to grant summary judgment. I can't grant it because there's at least a conflict of evidence. Is that your position? Absolutely. And, therefore, they can't appeal that. They can't appeal that. That's true. Obviously they can't appeal that because all the district judges say,  Right. That is my point, Your Honor. And I would submit that under the Banuelos v. Construction Lab Trust Funds case, the court couldn't grant summary judgment in favor of Mostec. And if they couldn't grant summary judgment, they can't raise that issue on appeal. What they could have done in this case, given Gomez's deposition testimony, is they could have gone to trial and they could have submitted evidence at trial that established that the bonus agreement, in fact, had a five-year defined term and then raised a motion for directed verdict before the district court. Now it's put at issue. Now they can raise the issue on appeal. But, instead, they just ignored it. And, in fact, he stood up an oral argument on the summary judgment motion and withdrew it. You're saying the court did not. It doesn't look like it. The court did not grant Gomez summary judgment on the basis that it was not within the statute of fraud. It just didn't grant them summary judgment the other direction, correct? Right. And my interpretation of the court's decision is the first thing that the court said is that Gomez is claiming a five-year defined contract, a defined employment contract, and the bonus provision is part of that contract. So what the court said is, because that's for a defined term, that contract violates the statute of fraud. He can't sue. He was not entitled to continued employment. That was the words that the judge used. He wasn't entitled to continued employment after March of 2003. Therefore, he can't claim future salary and he can't claim future bonuses. You can't get future bonuses if you don't have a right to continued employment. But then the court said, I'm not going to stop there. He's worked. He worked during the year 2002. And he's entitled. I've got to analyze the bonus provision itself and whether or not it violates the statute of fraud. And in that particular situation, the court said it could have been performed within one year, which is a direct reference to the general auto parts case. If the bonus agreement does not have a set five-year term, if it is, in fact, as Gomez said, subject to the employer to decide if it wants to continue it on any given year, could it decide not to continue it after one year, two years, six months, or ten years? If it is an undefined term. As a matter of law, I can't say based on what I have before me as summary judgment. I'm saying as a matter of law, this court can't find or shouldn't find that the court is required to grant summary judgment in favor of Mostek. But you're saying during the trial, if there had been evidence presented as to that fact, the court could have, let's say, if Mr. Gomez got up there and said, well, it was a five-year bonus and da-da-da-da-da-da-da-da, then they could have made a directed verdict or something along those lines and taken that away from the jury. And they did not. Absolutely. They could have put him on the stand and could have asked him that question on cross-examination. But Mostek is also saying that the finding of Judge Williams was contrary to the Idaho statute of frauds, that he misstated what the law is and made a legal error. Yeah, but he didn't. I think if you look at the General Auto Parts case, given that the bonus agreement had an undefined term, did not have a five-year term, it was undefined. Given that it's undefined, it can be performed within one year. And in General Auto Parts, they identified circumstances such as death and bankruptcy. Because it could have been performed, could have been completed, and according to Rich Gomez, could have been withdrawn within a year. It does not fall within the statute of frauds. So then the second question is, assuming it does fall in the statute of frauds, we still have to deal with park performance and acknowledgment. We still have to deal with the exceptions to the statute of frauds. And those are viable exceptions. And they're directly applicable to this case. The court didn't deal with them because the court didn't have to deal with those issues on the summary judgment motion. And what happened here is what the Idaho statute of frauds says is that it doesn't bar the enforcement of oral contracts in general. What the statute of frauds says, and it's not much different than any other state statute of frauds, what it says is certain contracts either need to be in writing or there needs to be circumstantial evidence that is the equivalent of a writing before we will allow them to be enforced. That circumstantial evidence that is an equivalent of a writing can come through park performance. It can come through an acknowledgment, both of which apply in this particular case. What Mr. Boardman is trying to argue to you on appeal is that the Idaho statute of frauds requires more definiteness in a verbal contract to be enforceable than if it were in writing. And, in fact, in this case, Dennis Daley admitted, acknowledged that there was a over 25 percent of the profits of the boring division on an annual basis. Okay. That's a good segue for the instruction. And if that were, and my point is if that were in writing, they wouldn't even be arguing statute of frauds. We would be going to trial and we'd be trying exactly what we tried in this case, and that was what was intended by the parties when they said the term boring division. So now we go to meeting of the minds. And I would submit to the court that what Judge Williams did is exactly what he should have done. Now, I need to point out at the outset that what they've identified to be the standard of review on appeal is absolutely wrong. If Judge Williams is making a decision as to what the elements. Abuse of discretion. Right. This is abuse of discretion. Is it the jury instruction? Right. Because what he decided is, he said the evidence submitted at trial did not support the jury instruction. He's the person sitting at trial. He's the one hearing the evidence. He's the one hearing the testimony, seeing the evidence. He's the one that is best situated to make that discretionary ruling as whether or not an instruction is appropriate in a particular case. He decided, according to his decision, that it was not appropriate. And the reason he did that is simply this. Meeting of the minds instruction is appropriate in most contract cases, but it is not appropriate in every contract case. And this is the kind of case where it is not appropriate. This is the kind of case where both parties admitted common ground. Both parties admitted that Mr. Gomez was entitled to a bonus, 7% over 25% of the annual profits of the Boring Division. Both parties admitted that. There was no dispute. Now, they're saying there may have been, the jury could have found that there was no meeting of the minds as to the term Boring Division. Well, I submit again, that is completely improper. There is not one person that testified in this case that the Boring Division, that the parties did not intend that the Boring Division include at least in-house Boring Crews. Do you want to distinguish Connick? Pardon me? Do you want to distinguish Connick, where both parties admitted that there was a deal to sell an item, and both parties admitted it was to be sold for some price? Yeah, I think the distinguishment, and I think the distinguishment in that case, I think it was one party said, well, they said 5,620. 5,600. Right. There's no common ground there. I think the better hypothetical is what we put in. It is common ground. They agreed it would be a problem. $56. Well, if you want to be general, like your being, they said, we'll sell it to you for 5,620. There was at least common ground they were going to sell them to some dollar amount, and that's what this guy has. He has common ground he's going to get some dollar amount, right? Yeah, I think this is different, though. These are two entirely separate deals. I think a better hypothetical is what we put in our brief, and that is a manufacturer communicates with a buyer, and the buyer says, the manufacturer says there was an oral agreement that the buyer was going to buy widgets and gadgets. So we sent him widgets and gadgets. Buyer says, no, I never agreed. I agreed to buy widgets. I never agreed to buy gadgets. Well, certainly he could challenge under that there was no meeting of the minds as to buying gadgets, but he certainly can't challenge that there was a meeting of minds as to widgets. But in this case, weren't they just talking about widgets? I mean, that was the only term that was used. They didn't use widgets and gadgets. I mean, it was boring division. There was only one term. And I guess the best way to describe it would be simply this. If Dennis Daly had testified that boring division meant only in-house crews, which he did, and Rich Gomez had testified that boring division meant only external crews, a meeting of the minds and structure would have been absolutely appropriate, because the jury could have said they never agreed on anything. Well, let me ask you this. Let's just say hypothetically that we don't agree with you and we think that not giving the instruction was error. Is there a way that the error could be harmless? Absolutely. First of all, there was no evidence to support the fact that there was no contract. We submitted to the jury two questions. One is, did it involve just in-house crews, or did boring division mean in-house and external? If the jury found just in-house crews, there was still sufficient evidence for them to find that Mr. Gomez was entitled to a bonus. That there was a contract, but it was only in-house crews. So the options to the jury were either Mr. Daly's story or Mr. Gomez's story as to intent, but not neither. Okay. Do you want to save the balance? You're down to 40. Your Honor, I am going to sum up on that issue once. And that is your time. That's fine. Harmless error simply means, harmless error means that we need to establish that more likely than not, had the court given a meeting of the minds instruction in this case, it would have changed the verdict. And I would submit that the jury was instructed in this case that you have to decide what the parties intended by the term boring division. And they specifically decided that the parties intended that the term boring division include not just in-house crews, but external crews. Weren't they told that it was an ambiguous term? Were they instructed that they were defined what it meant because it was ambiguous? Were they instructed? I think, well, I don't know if they were instructed on that, but I think that was inherent in the, I see my time's up. Can I finish that answer? I think that was inherent in the courts, that the court determined that that was an ambiguous term. And I think it clearly was an ambiguous term. Did it mean just in-house or did it mean in-house and external? And that was the issue that a jury had to decide. That was the issue that was the factual dispute that the jury needed to address, and that's all that was addressed. And that's what the jury found. Thank you, Your Honor. Thank you for your argument. You start in the somewhat reverse order because, yes, the jury was instructed with ambiguity. I think Judge Williams considered when he rejected the fact that our argument that we needed a meeting of the minds instruction, he went with the ambiguity. So that was the instruction. I think it is not the question of whether or not this particular jury instruction was harmless. What the plaintiff under this circumstance has to prove is whether it was more probable than not that the jury would have found the same verdict. I don't know how any of us can pull out our crystal balls or look back. We do it all the time. We're issued one with a job. Okay. So just tell me then how. But harmless error, whether an error is harmless or not, there is we have standards to look at. But it does, you know, I think people do honestly rely on their experience as trial lawyers, as trial judges, or any number of things. And watching juries for, you know, and I think all of us here have sat as trial judges, have been trial lawyers as well. You know, whether we think, you know, I mean, would something different have happened? My point is that without that fundamental instruction that the jury needed to consider a mutual meeting or a meeting of the minds, which is completely different from ambiguity, how do you predict how they would come out? This is not your typical abuse of discretion on a jury instruction case. It simply is not. The jurors were not instructed on basically the fundamental crux of the issue. Well, albeit not the typical abuse of discretion, is abuse of discretion still the standard? No, it's not. Under your Jenkins decision in 1994, it is very specific that, yes, abuse of discretion is the typical standard by which you review the propriety of jury instructions. But when it goes right to the elements of the claim, under the Jenkins decision, it is a de novo standard. So I disagree that it's an abuse of discretion. Judge, Your Honors, I don't know how you look at the issue about whether boring division was integral or, excuse me, was material and essential to this contract, than we look at the classic restatement example of the peerless ship that we cited in a footnote in our brief. How is the definition of boring division any different in this context than which peerless ship was in the classic restatement example? It is not. It goes to the heart of the contract. And if it had been in writing, as counsel suggests, I really have got to believe that boring division would have been defined. What is boring division? It is the obvious question that has to be answered, because there was no agreement among the parties as to what it was. And it's a clever argument to say, well, at a minimum, they both agreed, at least on the in-house side of it. Therefore, there was a meeting of the mind. You can just fill in the blanks. That's very clever on appeal. That was never brought up before. And, plus, it's inconsistent with the testimony. Mr. Gomez testified not – and he couldn't testify that, oh, well, I just understood it was in-house. That would be completely contrary, 180 degrees, from the testimony that he provided at trial, that it was the in-house crews, the subcontractor crews, and the intercompany crews. You can't invent this argument that, oh, well, at a minimum, there was a meeting of the minds on the in-house crew, and, therefore, formations taken care of. We just get on and fill in the blanks on the other alleged ambiguities. The judge got ahead of himself. And I'll do respect to Magistrate Williams, who I've been in front of many times and have the greatest respect for, but the fundamental defense we had on this case that he pulled the rug out from under us on was to be able to get up and say, ladies and gentlemen, you need to first determine whether or not there was an agreement here over the bonus. And he precluded us from doing that. Did the evidence support that, that there was an agreement about the bonus? There was an agreement about the bonus, but not all the material essential terms of the contract. And the instruction regarding ambiguity didn't cover that? It let the jury fill in the blanks. And there is no case law that juries get to fill in the blanks on the material issues of a contract. That's why we have this fundamental, more preliminary issue of whether or not there was a contract formed. So your argument is that how the bonus was calculated determines whether, in fact, there was a bonus agreement? Yes. How it's calculated on the essential terms. I just want to say on the part performance issue, going back to the statute of frauds and the seven seconds I've got, I'm going over. You're going up. But just real briefly, and I will be brief, that there was no part performance here, Your Honors. The only time you get into some issue of some type of part performance or some type of acknowledgment that counsel mentioned is if there is an agreement to the mutual terms, a mutual assent to the, excuse me, I'm confusing it, if there is an agreement to the terms. And the Chapin case that we submitted to supplementary authority by the Idaho Supreme Court, it's a 2007 decision that came up during our briefing in this case. It, to me, is very clear on that. Very clear on that. Thank you both for your excellent argument. This matter stands submitted at this time. This part will be in recess until tomorrow morning at 9.15. All rise.
judges: Fernandez, Callahan, Gonzalez